# UNITED STATED DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

Joseph Odish, an individual

    **Plaintiff,**           CASE NO. 13 - _____

                                 Hon. _____

v.

Morgenthaler Ventures, a Delaware Corporation,
Gary Morgentaler, an individual, Gaye "Melissa"
Morganthaler, an individual, and David Jones, an
individual and DOES DEFENDANTS 1-20, jointly and
severally.

    **Defendants**.

_____/

ODISH & ASSOCIATES, PLLC
By: Joseph Odish (P53629)
Attorney for Plaintiff
39341 Fulton Ct, Ste 100
Farmington Hills, MI 48331
Tel: 310-345-2802
josephodish@gmail.com

_____/

## COMPLAINT AND JURY DEMAND

**NOW COMES** the Plaintiff, by and through his attorney, and states as follows:

## THE PARTIES

1. Plaintiff Joseph Odish lives in the state of Michigan and resides in Oakland County Michigan, at all times relevant to this matter.

2. Plaintiff Joseph Odish is a member of Cranbrook Capital Consulting Group, LLC, a Michigan limited liability Company, that has certain rights and the LLC is a party of interest injured by Defendants actions.

3. Defendant Morgenthaler Ventures is a Delaware Corporation and national and international venture capital company with offices around the country. By its own admission on its website (www.morgenthaler.com) it conducts business nationally and in each state.

4. Morgenthaler Ventures is an extremely successful venture capital company that conducts nationwide business as in its history it has helped provide funding to such companies as Apple, Sprint, Nextel, Nuance, SIRI (which it sold to Apple for approximately $250 mm), investing in startups or mature companies. It is one of the older and more prestigious VCs and raises, upon information and belief, 800 million dollars every few years to fund its startsup. Some remain startups. Other companies are taken public to the public stock exchanges, such as the NYSE or NASDAQ. The company does maintain offices throughout the country, including Cleveland and Boston and other cities, upon information and belief.

5. Defendant Gary Morgenthaler is a California resident and a major principal and senior equityholder in Morgenthaler Ventures and as the head of Morgenthaler Ventures, he is a venture capitalist that conducts business nationwide. He sits on numerous boards such as NUANCE, which sell the well-known Dragon speaking products in every state in the country. The Dragon speaking products are purchase and used by the Plaintiff.

6. Additionally, Gary Morgenthaler of Morgenthaler Ventures just raised $72 million dollars for an "app" called EVERNOTE (based on a 1 billion dollar valuation) that is available internationally via download.

7. It was Gary Morgenthaler's father who founded the VC company and it remains very much, upon information and belief, a "family run" business that both the company and the principals running it conduct business nationwide. In his role in running Morgenthaler Ventures, Defendant Gary Morgenthaler is required to transact business both nationally and in every state.

8. Defendant Gaye "Melissa" (or "lissa" as referred to in emails) Morgenthaler (or Melissa Morgenthaler-Jones, given to her marriage to David Jones) is also a California resident, the sister to both Gary and Todd Morgenthaler, an equityholder and venture capital partner in Morgenthaler Ventures and conducts business on a national basis as a serial entrepreneur.

9. Defendant David Jones is a California resident married to Gaye Melissa Morgenthaler-Jones and is a serial entrepreneur who conducts business on a nationwide basis.

10. Both Defendants Gaye Morgenthaler-Jones and her husband are on the Board of Directors of a company called Cognitive Code Corporation, a Delaware corporation, that transacts continious and systematic contacts with the state of Michigan as it has been in business with Chrysler since 2010. Thus, Morgenthaler-Jones and Jones maintain significant contacts with this state and district through their Cognitive Code relationship as delineated in greater detail below.

11. Defendants and Does are hereinafter referred to collectively as "The Defendants".

## JURISDICTION AND VENUE

12. The court has jurisdiction over the parties under federal question jurisdiction as this matter involves federal securities laws, as well as full diversity of citizenship. The court has jurisdiction over the parties as a result of Section 27 of the Securities Exchange Act of 1934 and 15 U.S.C.S § 78aa, effectuating nationwide service of process. The court also has subject matter jurisdiction of this case via diversity as the amount in controversy exceeds $75,000.00, and the Court otherwise has jurisdiction over the matter, pursuant to 28 U.S.C.S . § 1332.

13. As stated above, venue is also proper in this district under 15 USCS § 78aa which effectuate nationwide service of process and provides that any suit or action to enforce any liability or duty created under the Securities Exchange Act of 1934 may be brought in the district where any act or transaction constituting the violation occurred. Additionally, venue is proper under 18 USCS § 2, making the act of where the injury took place proper venue and also proper in this Court pursuant to 28 U.S.C.S. § 1391 as a substantial portion of the acts and omissions giving rise to the claims took place substantially in this district. Lastly, this Court shall have pendent jurisdiction over any and all state law claims.

14. It additionally must be noted that all defendants either individually or through Morgenthaler Ventures or through their relationship as Board Members of Cognitive Code Corporation (which transacts business with Chrysler) transact business within this state and district and thus providing an additional proper basis for jurisdiction and venue to be proper in this Court.

15. In connection with the acts, transactions and conduct alleged herein, Defendants have used the means and instrumentalities of interstate commerce, including the United States mail, wires, telephones, and/or potentially a facility of a national securities exchange.

## GENERAL ALLEGATIONS

16. Plaintiff restates and reincorporates by reference the preceding paragraphs as though fully stated herein.

17. Plaintiff is a present shareholder of record and a "frozen out" Board Member of the above referenced technology company, Cognitive Code Corporation, that was a complete mess when Plaintiff gambled on it in March 2011.

18. In the year of his life Plaintiff dedicated to it, the Delaware Corporation saw its valuation skyrocket as it became an acquisition target by HTC and Comcast in early November 2011, with valuations being tossed around in excess of 400 or 500 million dollars.

19. Cognitive Code was a tech startup floundering and being run by 3 family members: Leslie Spring, his wife Mimi Chen, and her brother John Chen who ran the company out of New Jersey. After nearly a year, and out of the blue in January 2012 (after of course the money arrived), a fourth party based out of New Jersey who was suddenly appointed General Counsel, Salvatore Difazio.

20. The four individuals named above shall be collectively referred to "**Corporate Co-Conspirators**" as they have engaged in wanton, willful, fraudulent and manipulative schemes to deprive Odish and his affiliated LLC of their undeniable rights and have, upon information and belief, violated a number of state and federal securities laws - with the knowing and substantial assistance of the present Defendants in this action.

21. The Defendants in the present action have both a personal and professional relationship with the "Corporate Conspirators" which has constituted a fraudulent and tortious scheme to deprive Plaintiff of his rights.

22. Defendants at all times relevant, by documentary admission of the "Corporate Conspirators" have acted as initially unofficial and then official "advisors" (and subsequently directors, officers and corporate insiders) to the Cognitive Code Corporation and its Corporate Conspirators.

23. Defendants have been consistently referred to as "advisors" in correspondences and emails to Plaintiff, despite the fact that upon information and belief, none of the defendants are registered under the federal statute dealing with regulation of Investment Advisors Act, 15 USCS § 80b et seq.

24. Cognitive Code Corporation transacts business with the state of Michigan as it is in business with Chrysler corporation, as stated above.

25. It must be noted that Melissa Morgenthaler-Jones and David Jones, upon information and belief, are the godparents of the two daughters of Leslie Spring and Mimi Chen and therefore the Defendants in the present action have a personal relationship with Cognitive Code Corporate Conspirators.

26. Plaintiff was asked to be a partner in a tech startup that was a complete mess and was issued non-dilutable stock, a Board Seat, but would eventually realize on multiple occasions that these people who asked him to help save and build their company would be revealed as Fraudulent Conspirators defrauding and oppressing Plaintiff and others, with knowing and substantial assistance by the Defendants.

27. Upon information and belief which is supported by significant documentary evidence, Corporate Conspirators never intended to honor their agreements and have almost certainly engaged in very serious and willful violations of state and federal securities laws.

28. On March 6, 2011, Plaintiff along with his friend John Bourbeau, signed a Letter of Intent with Cognitive Code and Corporate Conspirators to provide funding for this company which also included separate stock option rights, and which was highly speculative given the fact the company's software was predicated upon Artificial Intelligence that may never work and a pending patent that may never get issued.

29. As the Letter of Intent had a separate Option agreement to it granted to the affiliate LLC, under Federal law and Delaware law and California law, the LOI with the option agreement constituted a legitimate federal security interest.

30. Immediately realizing the company was an absolute disaster and subject to threat of a lawsuit in Alabama, Plaintiff - with a young wife five months pregnant with their first child - realized especially after seeing the awful Alabama Intellitar Agreement signed by John Chen, that it was a "cool" idea but this was folly.

31. At the urging of Spring, who stated and admitted to Plaintiff that he knew the company was a mess and that Odish would jump ship when he saw that awful Intellitar agreement, Spring offered Odish ten non-dilutable equity points to be a partner in the company and help him clean it up because he considered his brother in law a "disaster", incompetent and admitted to Odish that he harbored deep resentment for John Chen signing that awful Intellitar agreement in 2008, which crippled the company.

32. On March 18, 2011, Plaintiff and Cognitive Code Corporation and its three directors, John Chen, Mimi Chen, Leslie Spring signed a legally binding Contractual Addendum affording Plaintiff and Bourbeau non-dilutable equity stock in the Cognitive Code corporation, granting Odish a Board Seat and dual signature rights along with Leslie Spring on any and all contracts.

33. Under both federal and applicable state law, both the Letter of Intent, the Stock Option rights and Contractual Addendum are lawful under both statutory and US supreme court case law.

34. Immediately it became a full-time job and Odish was overwhelmed. As early as April 3rd, 2011, only a few weeks after signing the stock purchase addendum, Plaintiff informed Bourbeau he wanted to give back the ten equity points that were given to Plaintiff. But Plaintiff decided to stay on and essentially become a full time employee.

35. Plaintiff has, to the detriment of his own family and personal life, dedicated virtually all of his time to first a) cleaning up and building the company the first year, and then b) the impending and eventual litigation which has arisen and lingered into a 3rd year for two primary reasons: a) the willful, wanton and illegal conduct that Corporate Conspirators continue to engage in to this present day, including but not limited to the fraudulent filing of an SEC REG D form, and b) Defendants have aided and abetted, upon information and belief, such conduct.

36. **Plaintiff learns Corporate Conspirators are committing fraud against him.** Subsequent to the execution of the documents, Plaintiff learned that Corporate Conspirator John Chen and others had committed fraud against Plaintiff and the affiliate LLC and never had any intention of honoring their federal securities contracts.

37. Plaintiff is a named stock holder according the Corporate Stock Ledger - but to this day, Defendants and Corporate Conspirators have refused to proved Plaintiff with his formal stock certificates in willful disregard of federal securities laws.

38. After nearly a year of working for the company on pure "spec", amounting to in excess of 3100 hours and compensation of $8,000.00 for the entire year, with an additional $7,0000.00 going to Plaintiff's third year law student, Jason Green. And with lawful consideration under Delaware statutory section 152 being "any benefit" contributed to the company and Plaintiff contributed significant benefits, providing lawful consideration for such stock issuance.

39. In fact, Mimi Chen sent an email on December 12, 2011 "thanking Odish for getting the company up and running".

40. Plaintiff learned in November 2011 that the tech startup he had taken a massive gamble on was now an acquisition target by HTC and COMCAST, as stated previously - and its valuation had skyrocketed to 400 million or 500 million or even "several hundred million dollars", according to Spring.

41. **Spring Seeks Defendant Gary Morgenthaler's Advice in June of 2011.** As a result of John Chen's fraud, who was supposedly asked to resign but never did, problems erupted between the parties. In early June 2011, only months after signing the agreements, Leslie Spring sought the advice of his advisor and close friend Gary Morgenthaler of Morgenthaler Ventures regarding the documents Spring had signed with Plaintiff.

42. Defendant Gary Morgenthaler advised Spring that these were bad documents, the non-dilution would be a problem.

43. Conspirator Spring had legal counsel at this time and at all times relevant to this matter, before, during and after execution of agreements.

44. Defendants and their company Morgenthaler Ventures are shareholders in Apple, Inc. who at the time was engaging in an all out patent was and suing HTC, over patent infringement. Both multi-billion dollar companies.

45. APPLE, Inc. may have rights it wants to assert against Defendant Gary Morgenthaler as, upon information and belief, he was under a Non-Compete which he willfully

violated by providing advice and counsel to a known competitor such Cognitive Code.

46. Soon thereafter Corporate Conspirators engaged in a willful and wanton scheme to defraud Plaintiff by refusing to issue his Formal Stock Certificates and engaging in all the attendant conduct of a freezing out scheme and shareholder oppression.

47. When the patent "Notice of Allowance" was issued in late October 2011, on or about October 21, 2011, Spring informed Odish that Gary Morgenthaler would be heading up the sale of the company.

48. Plaintiff Odish objected as it appeared to be a very serious conflict of interest.

49. The Morgenthaler family and Morgenthaler Ventures had just sold SIRI to APPLE in April 2010 for approximately $250,000,000.00 and SIRI was clearly the main competitor (and an inferior product) to our company, Cognitive Code's technology software known as SILVIA as well as the patent.

50. It was a direct and self-serving conflict of interest that troubled Odish but on or about October 24, 2011, Spring wrote to Odish the following email, stating in essence: "I have known Gary Morgenthaler and Morgenthaler Ventures for a very long time and he has always given me great advice…".

51. Plaintiff relied on Spring's representation that he and the Morgenthalers would act in the best interests of the company in its impending sale.

52. A few weeks later, as HTC and COMCAST made inquiries about buying our company, Cognitive Code, Spring admitted to Plaintiff that Gary Morgenthaler had admitted to Spring that he indeed did have a serious conflict and that his brother Todd Morgenthaler and sister would take over the duties of handling the sale of the company.

53. Plaintiff Odish relied upon this representation and relied that Gary Morgenthaler would be the "advisor" along with his sibling and her husband that would handle the sale of the company to HTC AND/OR COMCAST in a proper manner and given their enormous expertise, acquire the best valuation for the company upon its sale as the Revlon Rule required.

54. There was an enormous amount of money involved as Spring stated he thought the company was worth $400,000,000.00 and then a few weeks later in early January 2012 said to Bourbeau the company is worth "several hundred million dollars".

55. Emails from Plaintiff to and from Mimi Chen on November 9, 2011 and December 6, 2011 clearly indicate that Plaintiff was in good faith relying on the Morgenthalers as investment "advisors" and corporate insiders to honor their duty in completing the sale of the company and procure the best price.

56. Plaintiff had no reason not to believe that Defendants would not be acting in his best interests and all the shareholders.

57. Plaintiff's expectation was of course that the Morgenthalers, in control of the sale of the company, would have the company sold by the end of the first quarter of 2012. This was an expectation made from representations by General Counsel Difazio.

58. However, that is exactly when the fraudulent and manipulative scheme or Corporate Conspirators seemed to coalesce with the self-interest, motive and wrongful intent of the Defendants - though Plaintiff would not know of the wrongful intent and fraud of Defendants until April 30, 2012, upon receipt of documentation by Difazio as delineated below. *(It was on this date that Plaintiff saw that Gaye Melissa Morgenthaler and David Jones had wrongfully been issued fraudulently backdated warrants, injuring Plaintiff and his LLC stock option rights).*

59. When SIRI debuted for the iphone, Gary Morgenthaler was interviewed by nearly every major US publication stating that SIRI would be a "game-changer". One can only imagine his chagrin, embarrassment and potential liability to Apple when he realized Cognitive Code had a very similar but superior product, with a superior patent that was and would be issued on February 28, 2012.

60. No doubt, it would cause Gary Morgenthaler a great deal of embarrassment.

61. Upon information and belief but not known to Plaintiff until April 30th 2012, Defendants were fully aware of the fraudulent scheme of Corporate Conspirators and provided material and substantial assistance in such scheme and fraudulent conduct.

62. Plaintiff and Bourbeau employed Michigan law firm of Giarmarco Mullins & Horton to send out a Demand Letter on February 28, 2012 pursuant to Delaware statutory section 220. As a Board Member, Plaintiff was entitled to see everything but had been frozen out for a long time.

63. On March 16, 2012, attorney sean walsh and Bourbeau had a conference call with acting General Counsel Sal Difazio. He made it clear perfectly clear that HTC had in fact made an offer for the company, and Spring had counter-offered but he refused to state what those numbers were. He willfully refused to provide a Board Member Odish with information he had a duty to disclose.

64. Also during this conference call, Corporate Conspirator Difazio admitted that the company was in process of setting up an advisory board or committee.

65. Upon information and belief, although Plaintiff did not know it at the time, the members of said committee were the Morgenthalers.

66. Throughout this time, Plaintiff was still expecting the company to be sold, whether in whole or 51% stake sold.

67. Sean Walsh, the attorney for the Plaintiff exchanged a number of correspondences that discussed the buyout of the shares, specifically the buyout of Odish's shares.

68. Difazio made an informal offer of 5 million dollars for his shares, but it was flatly rejected because the shares were worth at least 5x that amount according to Spring and the parties had not done an Inspection of the Books which was scheduled for April 17, 2012. But Difazio never permitted any inspection of the books.

69. Morever, the general counsel, Corporate Conspirator Salvatore Difazio never complied with the Demand Letter and furthermore above referenced date on April 30th, 2012 provided to Plaintiff's attorneys sixteen documents which did not comply with the demand Letter and more disturbingly in following subsection:

    a. General Counsel and Corporate Conspirator Difazio, a defendant in the pending matter, provided a **Corporate Stock Ledger that had fraudulent entries**. The Corporate stock ledger had Plaintiff listed as a shareholder but also showed that Gaye Morgenthaler and David Jones had been issued fraudulently backdated stock warrants.

    b. Difazio provided **additional financial statements that had fraudulent entries on them, including the Peter Winslow entry and a transaction log that was supposed to be complete through December 31, 2011 but stopped in mid-year 2009**.

    c. Despite assertions to the contrary that Difazio would deliver Formal Stock Certificates to Plaintiff, Defendants and Corporate Conspirators action have conspired to willfully refuse to provide the Formal Stock Certificates to Plaintiff, a willful disregard of federal securities laws that trigger the criminal provisions of federal securities laws.

    d. Provided to **Plaintiff and Plaintiff's counsel fraudulently and illegally backdated stock options, many of which were issued to Difazio, Gaye Morgenthaler, and her husband David Jones - at a price far less than what Plaintiff had offered in their Stock Option Purchase agreement**. As stated above herein, this date of April 30, 2012 was the first true date wherein Plaintiff, after acting in good faith reliance, realized Defendants have engaged in a manipulative scheme and course of business to defraud him and his LLC of their respective rights.

70. As stated above, in April of 2012, General Counsel Difazio made an informal offer of a buyout of Plaintiff's 50,000 shares for a high number of 5 million dollars through Plaintiff's attorney Sean Walsh. Plaintiff rejected the offer as there was no full disclosure as required under Delaware law and the parties had scheduled an

inspection date. Upon information and belief, the 5 million dollars would be provided by the Defendants.

71. The parties would eventually schedule a number of inspection dates that General Counsel Difazio did not allow to take place.

72. Making the Defendants and Corporate Conspirators actions even more wanton and willful, Plaintiff and his counsel had sent out Stock Option purchase agreement on March 8, 2012, to purchase 7.5% of Cognitive Code stock for $937,000.00, or $12.50 per share.

73. In the documents provided by Difazio on April 30, 2012, while Corporate Conspirators refused to perform on our legitimate stock option purchase, Corporate Conspirators and Defendants had no problem accepting manipulated stock warrants far below what Plaintiff and his LLC had offered.

74. The letter Difazio wrote even mentioned "certain professionals". And in a correspondence, Difazio wrote that he had to go San Francisco to meet with the law firm of Nixon Peabody, for the Cognitive Code company matters -- but the only relevant people in San Francisco are the Defendant Morgenthalers.

75. Defendant Spring stated to Plaintiff that the company was worth $400,000,000.00 on January 5th, 2012 and weeks later stated to Bourbeau the company was worth "several hundred million dollars."

76. It is understandable why Defendants would engage in wanton and willful misconduct towards Plaintiff.

77. There was a Forbes Article from July 2012 written about Cognitive code that specifically stated Cognitive Code was in business with Northrop Grumman, "one of big three automakers" (Chrysler) and received money from an Angel Investor.

78. Upon information and belief, the Angel Investor is Morgenthaler Ventures.

79. It is well settled that a third party who knowingly participates in the breach of a fiduciary's duty becomes liable to the beneficiaries of the trust relationship. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418 (1921); Penn Mart Realty Company v. Becker, Del.Ch., 298 A.2d 349, 351 (1972);

80. In Penn Mart, Delaware Supreme Court set forth the three elements which must be asserted in support of a claim of civil conspiracy: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) knowing participation in that breach by the party not in direct fiduciary relationship. A fourth element, the allegation of damages resulting from the action of the conspiracy parties, also is required. Weinberger v. UOP, Inc., Del.Ch., 426 A.2d 1333, 1348 (1981), rev'd on other grounds, Del.Supr., 457 A.2d 701 (1983). Weinberger notes that while the

essence of a criminal conspiracy is the agreement, the essence of a civil conspiracy is damages.

## FIRST CLAIM OF RELIEF
## VIOLATION OF SECTION 10(b) of the Exchange Act
## [15 U.S.C. § 78(j)(b) and Rule 10b-5 thereunder 17 C.F.R. § 240.10b-5]

81. Plaintiff hereby reincorporates all previous paragraphs as if fully set forth herein and incorporated by reference.

82. Defendants in connection with the purchase and sale of securities described herein, by the use of the means and interstate commerce and by use of mails, directly and indirectly:

   a. employed devices, schemes, and artifices to defraud;

   b. made untrue statements or omitted to state material facts necessary in order to make the statements made, in light of the circumstances made, in light of the circumstances under which they were made, not misleading; and

   c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

83. Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, acts, schemes, and artifices to defraud, made untrue statements or omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. In engaging in such conduct, Defendants were aware of Plaintiff's rights and acted with scienter, that is, an intent to deceive, manipulate or defraud with a severe disregard for the truth. And further, Defendants knew Plaintiff was acting in reliance upon Defendants actions.

84. By reason of the foregoing, Defendants, directly and indirectly, have violated and unless enjoined will continue to violate Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder [17 C.F.R. § 240.15].

85. Loss Causation-Economic Loss. Defendants actions pursuant to the violation of this statutory section has been the proximate cause constituting loss causation and significant economic damages incurred by the Plaintiff. Defendants presented a fraudulent picture that they would be handling sale of the company. Instead, Defendants took the opportunity for themselves and engaged in fraud upon Plaintiff causing enormous damages.

   **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants in an amount in excess of $75,000, together with interest, costs, and attorney fees.

## SECOND CLAIM OF RELIEF
### CIVIL CONSPIRACY

86. The Plaintiff reincorporates by reference and re-alleges the allegations of all previous paragraphs with the same effect as if fully set forth herein.

87. Corporate Conspirators owed Plaintiff a duty. Defendants were well aware of that fiduciary duty, caused and intentional breach of that fiduciary duty and provided knowing and substantial assistance to Corporate Conspirators to the harm of Plaintiff's rights.

88. In such actions, the Defendants confederated and conspired with purpose, intent and effect of harming Plaintiff and tortiously intefering with Plaintiff's rights, activities, and prospective economic advantage. The Defendants took deliberate actions and continue to take deliberate actions in furtherance of their conspiracy.

89. Each of the Defendant was an agent for the other Defendants and each aided and abetted the actions of the other Defendants as well as the original Cognitive Code "Corporate Conspirators" named as Defendants in the pending California action, wherefore the Defendants are jointly and severally liable to the Plaintiff.

90. As a direct result and proximate result of such conspiracy, the Plaintiff has suffered damages and sustained significant economic losses.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants in an amount in excess of $75,000, together with interest, costs, and attorney fees.

## THIRD CLAIM OF RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE

91. The Plaintiff reincorporates by reference and re-alleges the allegations of the previous paragraphs with the same effect as if fully set forth herein.

92. The Plaintiff had and continues to have a binding lawful contract entitling him to federal securities and stock certificates which Corporate Conspirators wantonly and illegally refuse to provide the Plaintiff.

93. Plaintiff further has contractual rights and had and continues to have prospective economic advantages, including but not limited to the sale of the company to HTC or COMCAST or third parties, which Defendants knew of and intentionally with said rights of Plaintiff to their own benefit, thereby disrupting the lawful activities of Plaintiff and his prospective economic advantage.

94. As a direct and proximate result of such interference, Plaintiff has suffered damages and sustained losses.

95. In such actions, Defendants confederated and conspired to tortiously interfere with Plaintiff's right with the purpose, intent, and effect of harming Plaintiff.

96. The Defendants acted willfully, wantonly and with reckless disregard for the Plaintiff's rights and interests.

97. Each of the Defendants was an agent for the other Defendants and each aided and abetted the actions of the other Defendants, wherefore, the Defendants are jointly and severally liable to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants in an amount in excess of $75,000, together with interest, costs, and attorney fees.

### FOURTH CLAIM OF RELIEF
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### AGAINST ALL INDIVIDUAL DEFENDANTS

98. Plaintiff restates and reincorporates by reference the preceding paragraphs as though fully stated herein.

99. Each of the Defendants knew of the wrongful actions of the Other Defendants, as well as the Corporate Conspirators, described hereinabove and each knowingly and intentionally not only received material benefits, directly and indirectly, but each Defendant knowingly and intentionally provided substantial aid and assistance to the wrongful actions of the other Defendants and Corporate Conspirators.

100. As a direct and proximate result of such aiding and abetting, the Plaintiff has suffered significant damages and significant losses.

101. In such actions, the Defendants confederated and conspired and aided and abetted with the purpose, intent, and effect of harming the Plaintiffs, and are therefore jointly and severally liable to Plaintiff.

102. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered, among other injuries, the injuries and damages stated above.

### FIFTH CLAIM OF RELIEF
### RESPONDEAT SUPERIOR

103. Plaintiff restates and reincorporates by reference the preceding paragraphs as though fully stated herein.

104. At all relevant times, Gary Morgenthaler, was a principal equityholder in Morgenthaler ventures and a representative and agent of that company and acted on its behalf.

105. It was absolutely improper for Gary Morgenthaler and his entity, Morgenthaler Ventures, to exploit material non-public information to his and his company's benefit, especially in light of the fact that the other companies involved (APPLE and HTC) are publicly traded companies.

106. Therefore, Plaintiff has been damaged by such course of action by Gary Morgenthaler.

107. Therefore, under a theory of Respondeat Superior, Morgenthaler Ventures is liable for the actions of its principal equityholder Gary Morgenthaler under the various theories promulgated herein.

108. As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, the exact amount of which will be proven at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants in an amount in excess of $75,000, together with interest, costs, and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court enter a judgment in favor of the Plaintiff and against Defendants, jointly and severally:

(1) Declaring that the Defendants have committed the breaches and offenses complained of herein;

(2) Awarding the Plaintiff compensatory damages in a manner to be determined during the proceedings;

(3) Awarding Plaintiff any and all punitive, exemplary or other damages as this Court sees fit.

(4) Awarding Plaintiff such other and further relief as the Court deems just and proper and as the nature of discovery may require.

## JURY DEMAND

Pursuant to the Federal Rule of Civil Procedure 38, the Plaintiff hereby demands a trial by jury in the matter herein of all issues so triable.

Respectfully Submitted,
ODISH & ASSOCIATES, PLLC


/s/ Joseph Odish
Joseph Odish (P53269)
39341 Fulton Ct, Ste 100
Farmington Hills, MI 48331